COUNTY OF DANE, a municipal corporation, Plaintiff-
Appellant,

v.

Dwight NORMAN and Patricia Norman, Defendants-
Respondents.†

Court of Appeals

*No. 91-0486. Submitted on briefs September 6, 1991.—Decided
April 9, 1992.*

(Also reported in 484 N.W.2d 367.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the brief of *Cal W. Kornstedt,* Dane County Corporation Counsel, and *Margaret L. O'Donnell,* Assistant Corporation Counsel, Madison.

For the defendants-respondents the cause was submitted on the brief of *Michael J. Lawton* and *David E. Rohrer* of *Lathrop & Clark* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Dane County appeals from a judgment dismissing its complaint alleging a violation of its fair housing ordinance by Dwight and Patricia Norman who own several rental properties in Dane County. Both parties moved for summary judgment. The issue is whether the Normans have discriminated against potential tenants on the basis of marital status, contrary to Dane County Ordinance sec. 31.10. We conclude that they have, and therefore reverse and remand for further proceedings.

Dane County Ordinance sec. 31.10(1) provides in relevant part: "It shall be unlawful for any person to

discriminate . . . [b]y refusing to sell, lease, finance or contract to construct housing or by refusing to discuss the terms thereof . . .." Section 31.03(2) provides in relevant part: "Discriminate and discrimination mean to segregate, separate, exclude or treat any person or class of persons unequally because of . . . marital status of the person maintaining the household . . .." Section 31.03(5) provides: "Marital status means being married, divorced, widowed, separated, single or a cohabitant."[1]

The issue having arisen on motion for summary judgment, we treat the uncontested facts presented in support of the motions as undisputed. The claimed ordinance violations involve two groups of potential tenants. In May 1989, Joyce Anderton contacted Dwight Norman and asked if he had any three-bedroom duplexes available. He said some would be available in July and asked how large Anderton's family was. She said she was not married and would be living with two single women. Norman replied that he would rent to her individually, but not to groups of single people. Otherwise, he explained, she would divide the rental payments with her roommates, and if one or two moved out, the payments would not be made in full. He rejected an offer that one of the three be solely responsible for the rent.

In August 1989, Dwight Norman showed one of his apartments to Deb Dana and her two children. Dana told Norman that she and the children would be living with another woman. He told Dana he would not rent to two unrelated people and he would not have shown her an apartment had he known she intended to live with another single adult. He did not ask Dana what her income was.

---

[1]Section 31.90 of the ordinance provides that persons who willfully violate the ordinance shall be subject to a forfeiture.

The application of an ordinance to undisputed facts raises a question of law. We decide such questions without deference to the trial court's opinion. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The trial court held on these undisputed facts that the Normans' had not discriminated against Anderton or Dana on the basis of marital status. The court reasoned that since Dwight Norman refused to lease to Anderton and Dana because they intended to reside with other unrelated individuals, he was motivated by their intended conduct of residing with another unrelated individual rather than by their marital status. The court relied on *Federated Rural Elec. Ins. Co. v. Kessler,* 131 Wis. 2d 189, 388 N.W.2d 553 (1986).

The issue in *Federated Electric* was whether an employer's rule prohibiting the romantic association of any employee of one sex with a married employee of the opposite sex discriminated on the basis of marital status, contrary to a Madison ordinance. The ordinance provided in relevant part:

> (7) <u>Employment Practices.</u> It shall be an unfair discrimination practice and unlawful and hereby prohibited:
> (a) For any person or employer . . . to discharge any individual . . . because of such individual's . . . marital status.

Madison General Ordinances sec. 3.23 (1986).

The *Federated Electric* court analyzed the employer's rule as follows:

> In this case, Federated's rule proscribed certain conduct among employees which all employees were required to honor. The sanction of the rule is not

triggered by the offending employee's marital status. The rule does not require the offending person to be married for its application because a person can be a party to an extra-marital association regardless of their own marital status. In this case, for instance, Kessler [the employee discharged for violating the rule] would have been prohibited from associating with Farin, a married person [and co-employee], whether he had been married, separated, divorced, widowed or single. His marital status was irrelevant to his discharge because Farin was married. Thus, Federated's rule prohibited a course of conduct rather than a status. The rule simply does not condition employment on having a specific marital status.

*Id.* at 208, 388 N.W.2d at 560.

Unlike the employer's rule in *Federated Electric,* the Normans' "rule" discriminates on its face. The Normans will lease to a married couple but not to two or more single persons. This is facial discrimination on the basis of marital status. It excludes two or more single persons because they are unmarried and unrelated. Under the Normans' rule, a married couple could lease an apartment, but if they later divorced and wanted to continue to share the apartment the Normans' rule would disqualify them. The Normans would reject as prospective tenants two unrelated single persons, yet they would accept those same two persons if they married. It is immaterial that the Normans do not exclude single persons who will live alone. When single persons live together and are unrelated, they are excluded because of their marital status.

The Normans contend that they rent to single persons but refused to rent to Anderton and Dana because they intended to occupy the premises with other unre-

lated individuals, and that, in the Normans' view, is conduct. The problem with that analysis is that the so-called conduct is marital status in fact. If either Anderton or Dana proposed to share the premises with a spouse, the Normans would have rented to them. Because Anderton and Dana propose to occupy the premises with other unrelated individuals, the Normans will not.

■

The Normans contend that the ordinance is invalid because its definition of marital status includes "cohabitant[s]," and therefore the county exceeded its authority under sec. 66.432, Stats., the enabling statute. That argument is not relevant to the case before us. No one claims to be a cohabitant. The Normans' rule is facially discriminatory since it excludes single persons on the basis of their marital status.

■

The Normans contend that because it is ambiguous and is a penal ordinance whose violation is punishable by forfeiture, the ordinance must be construed strictly in their favor. We disagree. The terms "married" and "single," as used in the ordinance, are unambiguous.

The Normans contend that they articulated a legitimate business justification for their decision not to rent to groups of unrelated individuals. The justification is that groups of unrelated individuals are less stable tenants than families or married couples. But after Norman told Anderton he would rent to her individually, he rejected an offer that one of the three be solely responsible for the rent. And yet under the Normans' rule, they presumably would have rented the apartment to any of the three provided that they live there alone. The only reasonable inference is that the claimed business justification is not why the Normans exclude two or more

unrelated single persons. *See Pfeifer v. World Service Life Ins. Co.,* 121 Wis. 2d 567, 570–71, 360 N.W.2d 65, 67 (Ct. App. 1984) (on undisputed facts, the drawing of the only reasonable inference is a question of law).

We conclude that the Normans' motion for summary judgment dismissing the complaint should have been denied and the county's motion for judgment should have been granted. We therefore reverse and remand to the trial court for further proceedings with regard to the consideration of penalties.

*By the Court.*—Judgment reversed and cause remanded.